Submitted October 5, reversed and remanded November 9, 2011

HOUSING AUTHORITY OF JACKSON COUNTY,
*Plaintiff-Appellant,*

*v.*

Gregory GATES,
*Defendant-Respondent.*

Jackson County Circuit Court
100023404E; A147127

267 P3d 169

David B. Paradis, Mark R. Weaver and Brophy, Schmor, Brophy, Paradis, Maddox & Weaver filed the brief for appellant.

No appearance for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

DUNCAN, J.

.

**DUNCAN, J.**

Plaintiff filed this action for forcible entry and detainer (FED), asserting that it had a right to possession of the premises at issue because it had properly terminated its lease agreement with defendant based on defendant's violation of a material term of the lease agreement, specifically, an occupancy rule prohibiting loud noise and illegal activity. The trial court entered a judgment in defendant's favor, holding that the lease agreement did not incorporate the occupancy rule. Plaintiff appeals, and we reverse.

We begin with the relevant facts. In October 2009, plaintiff leased an apartment to defendant. On August 22, 2010, police were dispatched to the apartment in response to a noise complaint from a neighbor. Defendant was arrested for possession of methamphetamine. On August 27, 2010, plaintiff issued a termination notice to defendant, giving him until September 30, 2010, to vacate his apartment. The notice informed defendant that his lease was being terminated for violation of an occupancy rule:

"This notice is being given for the following breach of and noncompliance with your rental agreement:

"**Lease/Occupancy Rule Violated:**

"Occupancy Rules-Section 4: Conduct: Tenants and their guests are not permitted to make loud disturbing noise, or to disturb your neighbors' peaceful enjoyment of their unit or premises. Loud talking or music, unnecessary noise, boisterous conduct, or loud television sets are not allowed. Noise should not carry outside your own unit or be heard in a neighboring unit. * * * Tenants and their guests will not engage in any illegal activity, or other activity that impairs the physical or social environment of the apartments."

(Boldface in original; internal quotation marks omitted.)

Defendant did not vacate the apartment, and, on October 6, 2010, plaintiff filed this FED action to evict him. Plaintiff's complaint sought possession based on the August 27, 2010, notice to terminate. Defendant filed an answer asserting, *inter alia*, that nothing in the parties' lease agreement authorized termination based upon his conduct.

On November 5, 2010, the case was tried. Plaintiff's employee, who managed the apartment complex where defendant lived, testified that defendant had signed a copy of the occupancy rules at the same time that he had signed the lease agreement. He further testified that defendant had violated an occupancy rule, as alleged in the notice of termination, and that the occupancy rules "are part of the Lease Agreement."

The trial court found that defendant had violated the occupancy rule as plaintiff had alleged, but questioned whether the occupancy rules had been incorporated into the parties' lease agreement. Ultimately, the court held that the occupancy rules had not been incorporated into the lease agreement and, therefore, plaintiff had failed to prove that defendant had violated the lease agreement. The court explained:

> "The Lease Agreement simply says, attached hereto is a bunch of stuff including the occupancy rules. I am not finding anywhere in the Lease Agreement where it incorporates that and makes it a part of the Lease Agreement, and so I strongly encourage the Plaintiff to take a look at their Lease Agreements to make sure if that is what you intended to have happen. * * * [If the attachments are] supposed to be part of the lease it needs to somehow be incorporated and not simply attached."

Plaintiff appeals, asserting that the trial court "erred in its determination that [the occupancy] rules were not incorporated" into the lease agreement. We review a trial court's interpretation of a lease agreement, like any contract, for errors of law. *See Yogman v. Parrott*, 325 Or 358, 937 P2d 1019 (1997) (prescribing method of contract interpretation). We first examine the text and context of the contract as a whole to determine if the provision at issue is ambiguous. *Id.* at 361. If it is not, our analysis ends. *Id.* Accordingly, we turn to the terms of the lease agreement.

Paragraph 14 of the lease agreement provides, in pertinent part, that "Owner/Agent may terminate this Lease and evict Tenant for any of the following reasons: (1) material noncompliance with the Lease." Paragraph 20F, the penultimate paragraph of the lease agreement, provides, "ENTIRE

AGREEMENT: * * * The terms set out above, together with the attachments noted below[,] represents the entire agreement between the parties." At the end of the lease agreement are the parties' signatures and a list of "Attachments to [the] Rental Agreement," the first of which is "Occupancy Rules."

"Where a written instrument refers in specific terms to another writing, the other writing is a part of the contract." *NW Pac. Indem. v. Junction City Water Dist.*, 295 Or 553, 558, 668 P2d 1206 (1983), *modified*, 296 Or 365, 677 P2d 671 (1984). Here, the lease agreement specifically refers to the attachments, including the occupancy rules, as part of the entire agreement between the parties. Thus, the trial court erred in holding that the lease agreement did not incorporate the occupancy rules.

Reversed and remanded.